May it please the Court, my name is Michael Kuhn. I represent the appellants in this matter, Crab Addison, Inc., which was formerly known, I'm sorry, Crab Addison, Inc., and the United Restaurant Group, Inc., which was formerly known as Joe's Crab Shack Holdings, Inc. I'm going to apologize to you on that one, Nicole, given what's going on these days. I should have just said, just Nicole. As you know, we're appealing a district court order which remanded this putative class action back to state court. This appeal raises what we believe to be some important issues relating to the Class Action Fairness Act. Most importantly, it raises the issues of what a defendant must do in establishing that there's more than $5 million in controversy in order to remove a case under the Class Action Fairness Act. And if the district court order is upheld, if there's anything a defendant could do to remove a case under the Class Action Fairness Act. Here, after more than a year of trying to get the plaintiff, the appellee, to provide any information about what his damages were in the case, after two court orders, after two sanctions, the appellant finally received information from the appellee about what his claims were. And he claimed that he was working 20 to 30 hours of overtime per week, every week, and that he never received a meal or rest break. Taking those allegations and coupling them with the allegation of the complaint, the plaintiff's claims were typical. That's contained in, I believe, paragraph 15 of the complaint. The plaintiff's claims were typical, and no distinction made between the causes of action and the damages. What the appellant did was to extrapolate his claims across the putative class. Can I interrupt you for a moment, just as a threshold matter? The key document here for the district court, I guess, was Kevin Cottingham's declaration. And the district court says, I don't see that the facts in this declaration has carried the defendant's burden of showing, by preponderance, using the preponderance standard, that it's more likely than not that the amount of damages at issue or the amount of claims at issue is more than 5 million. Now, are we reviewing that? That sounds like a factual determination. Are we reviewing that for clear error, or are we reviewing it under some other standard? I believe the standard that we're reviewing under is clear error, and I hope that I'm not mistaken about that. I believe that the district court's concern that it articulated both at the hearing and in the brief, I'm sorry, in its order, was that it could not tell from reviewing Mr. Cottingham's declaration the number of work weeks that were at issue. Or whether he actually looked at actual work weeks or whether he did some other type of math, it's made the assumption that there were X number of putative class members and they all had the same damages. So just to be redundant, we would have to find that the district court's determination that the defendant didn't carry by preponderance was clearly erroneous. Is that your? I believe that's clear, and I do understand that's a high standard, but I also believe that if you look at Mr. Cottingham's declaration, it addresses rather succinctly the issue that was raised by the district court. The concern that was raised again by the district court that they couldn't tell whether he relied upon actual work weeks is in fact addressed in Mr. Cottingham's declaration. This wasn't a case where he just took the number of employees and multiplied that by the number of damages that the appellee was claiming. In fact, if you look at his declaration in paragraphs 2 and 10, he made clear what he did, that they looked at the actual dates of employment for each employee, the actual work weeks used. Well, he sort of says that, but it seems like the district court was concerned because it's a, just trust me, we looked at the actual weeks, so it's not said as expressly as that. And he doesn't show his work as it were. He doesn't say it was an average of X weeks or we made the assumption that there were 102 employees, managerial employees, who worked for the entire four-year period. So there's some gaps in what the assumptions were on which the numbers were based. Why wasn't the district court entitled to say there are too many gaps here? I think the district court certainly could question that, but we believe that ultimately that Mr. Cottingham's declaration does address that and that there truly aren't any gaps there if you read his declaration in full. I will tell you, and I don't mean to be glib, but save for the great Gatsby, I can't think of a single document in the history of the English language that couldn't have been written a little differently or a little bit better. Well, how many weeks are being, where do I look into this declaration to see how many weeks? It's not there. It's not there. It's not there. He did something different. What he did is instead of just saying that we went back and we looked and we found that there were 12 restaurants and there were three managers at each restaurant, so we went back in time, we multiplied the 36 managers at any given time. They did something, in our mind, better and something that we think is more precise. They actually went through and did the analysis for each employee from the start date to the termination date, how many weeks that they worked, and then ran the numbers based on that. The same with the termination dates for the penalties on the termination dates. They looked at the actual termination dates. They made no assumptions on those. They looked at the actual dates. I do understand the concern that he did not show the math, that he didn't go through and do that. And I don't have the spreadsheet. So is it enough for somebody to come in, the senior vice president of human resources, and say I have looked at the actual numbers and here's the total amount? I mean, would that be enough? This is the total amount. Trust me. I looked at the actual numbers. I would suspect that you, like I, would want something more than that. You want to know some of the details that went into it. We're assuming in this discussion, and I'm willing to assume purposes of the discussion, although I understand that the plaintiffs don't agree, that you can extrapolate as to the amount of overtime and rest period errors or nonpayments from the plaintiff's own circumstance. But that's a leap right there. Right? But let's assume that for the purpose of the discussion. But if you assume that, there's no reason at all that there couldn't have been some explanation. In fact, what you did was pretty much counter to what Judge Acuda described, except that you broke down the different kinds of damages. So you have a number for overtime and you have a number for rest periods and you have a number for different kinds of penalties. But what you don't have is any explanation for how you got from, how you got to the bottom line of any of those numbers. And I guess my real question is, do you get to do it over? I mean, I can't make sense out of what this is, so I can't really make a determination. Do you get a remand to now give us the spreadsheet or what? Well, it may depend on what you say. We certainly hope that after you review the papers and hear what the parties have to say today, that you're going to conclude that it's more likely than not that there's more than $5 million in controversy. Well, how would you? Let's take, let's start with the, you say the declaration says that there's $3,666,459 in overtime, using 20 hours of overtime a week. Now, I still can't go back from there. I mean, maybe I could with a calculator and a computer and figure out how many employee weeks you're talking about there to see if your math adds up. Right. Could I do that? Have you done that in your brief? We have not done it in our brief. It could be done. In fact, I would hate to waste your time doing it, but it would be relatively easy to do, I believe, because we know that the average rate of pay is, that Mr. Cottingham concluded was $50,000 per year. You work that out to an hourly rate, and then time and a half of that we would know what the hourly rate was. We would just divide that and come back with that. What I would say is, and to go back to the answer of what I believe was your two questions ago about whether there's another chance to do this, what I would say is it may depend on what you all rule today, because if you rule today that we could not, that it's impermissible for a defendant to do what our client did in this case, which is to extrapolate, then there will be a time later in this case, for certain, I would say, when the case will then become removable, whether that's because our client decides to take on the onerous burden, which we don't think it should have to do, of going out and interviewing all of the 150-plus members. And that's why I said there are two issues. One is the extrapolate issue, but the other is, assuming the extrapolation, how did you get to these numbers? And I'm having a hard time with the second one right now because I can't figure it out. But he did. And I'm sorry. I believe it was clear in the declaration. I understand that people have questions. And, again, it could have been done many, many different ways.  is a 500-page spreadsheet going through for each person how I calculated this. We chose not to do that because we didn't think that that would be more likely than not standard. That was necessary. Frankly, we thought it was in itself too onerous. But how can I figure out whether this is more probable than not if I don't know anything about its premises? Well, the premises are that he and the human resources staff calculated this based upon a $50,000 per year average salary for these positions and based upon each employee's actual start salary. I should say that my ability to credit this is somewhat affected by the fact that Kevin Cunningham's first declaration and second declaration don't match. I'm not sure where they don't match. Well, in the number of employees and so on. He said in the first declaration there were 39 employees, managers, and now he says there are 44 managers. So they don't match. I'll tell you why they don't match. They don't match. And this is not in the record. They don't match because I believe between the time of the first declaration and the second declaration they had company turnover. There were five managers who left and had to be replaced. The size of the class continues to grow as the case has gone on. So originally there was a smaller number. As managers have been replaced, the size of the class has gotten larger. Let me ask you for a moment just about the extrapolation point. And your brief stresses that you're relying on a typicality theory. But my understanding of the class action law is that the typicality is only as to the type of the claim, not to the amount of the damages. So I couldn't see why it would be a safe assumption that all of the managerial employees would have worked the same amount of overtime as Mr. Martinez. Well, you know, I understand your question and I understand your concern. There are a couple of answers to that. First of all, they've made the allegation that the claims are typical, not saying just the causes of action, but the claims, which would include damages. But second of all, for the purposes of removal, one of the things that the Senate stressed was that this mechanism is intended to replace the old mechanism where you had to do individualized analyses to determine whether everybody, every single class member individually had $75,000 in controversy. This was meant to replace that and to make it easier, allow you to aggregate things. If we cannot assume that the name plaintiff's damages or the way that he computed his damages would be typical, then the Class Action Fairness Act becomes meaningless. You would have to now do the very same individualized analysis for everybody that you, that the Class Action Fairness Act was meant to do away with. And what would ultimately happen is that... Your assumption was that their damages would be the same as Mr. Martinez. And I'm questioning whether that was reasonable or not, since the only argument you make is this typicality one. Well, it's not that... And I don't mean to split hairs. It's not that the damages would be the same as his, but the way the damages were computed, that the claims would be the same, that each of them would claim that they worked 20 to 30 hours of overtime a week, and each of them would claim that they never got a meal break. And again, that's just for the purposes of removal. We anticipate, as the case plays out, that people are going to say something very, very different. But I think one of the important things about it is a point that I just made in passing, but I don't want it to just be there in passing, that if a defendant isn't allowed to extrapolate, isn't allowed to assume that the plaintiff's allegations are typical, very few of these cases are going to end up being removable. And in the wage-hour context in particular... If the defendant is not allowed to. Yes. Yeah. In the wage-hour context in particular, it would seem that none of these cases would be removable. Very few, if any, employees work identical hours. They don't. You see this when you come in in the morning. Some people come in before others. Some leave at different hours. Well, but in a class action, you're – I've never seen one of these before, but... I've seen too many of them. This is a – I'm just confessing, so I'm trying to get new concepts here. It's an odd thing to have the defendant arguing that the damages are more than $5 million. But isn't the defendant in a wage-and-hour case, isn't the defendant in a better position to understand what the aggregate claims of the class might be? No. Why not? Absolutely not, and I'll tell you why. This is a perfect example of one of the reasons why the defendant is in a worse position than the plaintiff's. This is a misclassification case where they're claiming that managers were improperly classified as exempt and are entitled to overtime. Because they were classified as exempt, the company doesn't track the number of hours that they work. The company does not know what times they come in and what time they leave, precisely because they're classified as exempt, much like I am and you are. You are, I suppose, that nobody keeps track of when you come in. The number of hours that an exempt employee works is uniquely in their own mind. For instance, in this case, only the appellee, Mr. Martinez, knows how many hours... Well, it's not uniquely in their own mind. There's an actual fact about what they're... I mean, there is a fact behind what's in their mind, but the question is who knows the fact. The only person that will... Unless somebody happens to be there most of the time or all the time when an exempt employee is showing up and leaving, the person who... The allegation as to what the hours were, I believe, is uniquely in the appellee's mind. Nobody knows exactly when an exempt employee comes in and an exempt employee leaves under most circumstances. So I guess there could be a company policy that the manager has to be there at 9 when the restaurant opens and stay until 9 at night, and then you would be able to make some assumptions that if they were misclassified, how much of that was overtime. If you could make those assumptions, but then again, even those assumptions could be challenged, much in the way the assumption that we're making today is being challenged, because you may have employees that say, sure, I was expected to be there from 9 to 9, but in actuality, I came in at 6 and I left at 10 at night, or it was something along those lines. Okay, thank you. Thank you. You have used your time. May it please the Court. Matthew Brigetti, representing respondents. There were several issues that are going on in this case, and I take it from, well, I'll start from what I've seen as the questions that you asked the appellant, as what the Court is focusing on. If you look at what Mr. Cottingham put in his declaration, what they based their removal upon, they say that they didn't know the number of hours that the plaintiff worked until they received these discovery responses. But if you start breaking down their numbers, you see that that number is a small part of the total number that they base their capital removal upon, that, in fact, all the other information that they had already got them above, according to them, got them above the $5 million threshold. So the question then becomes, well, why did they wait 18 months to file the removal papers when they had, according to them, all this other information, and the only thing they were waiting on was the number of overtime hours worked by the plaintiff? And so one of the first questions, I think, is, is it timely to do the removal? The second question, and we don't think it is. Just by looking at their own papers, the basis for their removal largely was information that they had before. The second question, and I guess I should make this the first question. Let me just say something about that. I hadn't thought about that before. But your statement depends on the notion that it was only the overtime they were waiting for and not the rest period information. Is that right? Well, they could have done the extrapolation on the rest breaks and meal periods without having him say that he missed all rest breaks and meal periods. Why? Because when you do removal, it's my understanding that you can assume that the complaint, the total amount that's available under the allegations of the complaint. And the complaint said that they never paid. Is that what the complaint said? And so they could have assumed that no meal breaks and rest breaks. Yes. Is that what the complaint said? The complaint says that meal breaks and rest breaks were not provided or authorized and permitted and not provided, which is the standard in California. And you're right. It is an odd situation in these cases where the defendant is arguing for higher numbers. But the defendant doesn't have to really take a position that that is the number. All it has to do is say under the theories and allegations of the complaint, if proven, these would be the numbers. Well, it depends how much extrapolation. That's why it seems to me that there are two problems here. One is the extrapolation problem. The other is the demonstration with whatever extrapolated number you use, how it adds up. But my understanding is that you're challenging the extrapolation from the main plaintiff situation. Is that correct? That's one of the things. All right. So now if that's true, how do they make any showing without essentially proving their case for you? On the merits. Well, they can come in with supervisors' declarations saying how many hours people were expected to work. They can come in with, I think you had mentioned policy. But then they're basically bearing the plaintiff's burden of proof as to what, whether there was overtime, how much overtime, whether there were rest breaks, how many rest breaks, et cetera, for each individual person. Then they're actually providing evidence. Right. So should they be allowed just to make assumptions based upon the theories and allegations of the complaint? And I think they are entitled to make assumptions based upon the theories and allegations of the complaint. There's two problems with that in this case. First, those assumptions based upon the theories and allegations of the complaint were known to them within the 30 days that they should have been removed. Okay. I understand that. Okay. But I'm trying to explore the other one. The second thing is, when we all went to school and my help, my tape of their homework, it's still the rule that you have to show your work. I understand that. I'm trying to deal with the other one first. Which one? I want to know what your ultimate position is on whether they can use the facts of the name plaintiffs as to the amount of overtime and the amount of rest breaks or whether they need to go on an individual basis or whether there's some in between. What should they have done, not on the show your work issue and not on the timeliness issue, but on demonstrating their underlying assumptions? There are many ways, several ways, I would say, that they can come up with the overtime hours worked. And we've seen it in other cases. This is not the first wage and hour case that's been removed under CAFA. And the way that we've seen it happen, this is the first time we've seen it just based upon what the class representative had to say about overtime hours worked. We've seen it done based upon, for instance, an expectation that people were scheduled a certain number of hours of work, that they were expected to work a 50-hour week or a 55-hour week. So in this case, for example, would the opening hours of the restaurants be relevant? Pardon me? Would it be, could they use the opening hours of the restaurants by saying that the managers were expected to be present for those opening hours? I think that's a relevant consideration for sure. That's one of the considerations. And even, you know, maybe they arrive 15 minutes ahead of time or half hour, leave a half hour later. But you're not suggesting they had to break this down on an individual basis. Pardon me? You're not suggesting they had to break this down on an individual basis for this purpose. I don't see, frankly, how you would do that. You know, we wouldn't presume that we have, in a class action, that we would have to break down each individual's, and we wouldn't really want to go in and break down each individual's damages on an individual basis at the time of a damages trial. We would come in with some survey or some other means to extrapolate scientifically to do that. Now, within the first 30 days of a complaint, is it reasonable to say that a defendant has to come in with that level of proof? I would say that it is not reasonable to make them go to those steps. So assuming that we agree with the district court that it was a preponderance standard, a legal certainty standard, what more would they have to do? One of the things that troubles me is their only need to show that's more likely than not, that's more than 5 million. How much more, why isn't this enough? How much more detailed does it have to be? And how would we articulate what the standard is that the defendant has to show? Well, they have to show their work, and they should show it. Well, what does that mean? I mean, that's a good expression, but. So you have calculations that are based upon numbers. These calculations, in the wage and hour area, we all know what those calculations are, that in order to figure out rest breaks, assuming all rest breaks were lost, you need to know a total number of shifts that would meet the standard for rest breaks, and I think it's five or six hours. Every shift that was more than a certain number of hours, and the consequence for missing a rest break is one hour of pay. So you need to know shifts over a certain number of hours and the hourly rate. Now, we know the hourly rate because. He says it's 50,000 is the hours you work back to the hourly rate. And then he says, well, we use the actual hire date and termination date of the actual managerial employees. Why isn't that enough? I'm not sure what that means, and I'm not sure what calculation methods they used in reaching the numbers that they reached, and I don't know. What's mysterious. We agree that there's no work work. What's mysterious about, you know, the hire date and the termination date so you know how much, how many weeks each individual worked? I don't see anything mysterious about that. They just don't tell you what the hire date and the termination date was. You have 102 employees. We know the actual dates of work, and we have a weekly. We're estimating 20 to 30 hours of overtime, and we know what the rate would be a time and a half extrapolated from the 50,000. You're assuming that they used hire dates and termination dates within the statute of limitations, which frames the allegations of the complaint. Well, I think that's what they said, right, So if you base it on hire and termination date, then how many work weeks do you get? And what calculation? Well, you could work backwards and figure that out from this, right? Couldn't you do that? You could take their numbers. You could try. I mean, I started to try to do it, but you could take their numbers and you could work backwards and figure out how many work weeks they're talking about. You could try, and you wouldn't know whether that was actually the work weeks, though, because they never told you what the work weeks were. But they said we used the work weeks, and then you could take their numbers and you could extrapolate backwards and figure out the work weeks, and then you could say that there's an implicit allegation here that this is the number of work weeks. Now, I haven't done that work, and maybe it will turn out that they don't match up and that the numbers don't make sense. That's certainly possible. I've not done that work either. What we see in the declaration, and they were given two opportunities to submit declarations. So this is my ultimate question. Does it make – I understand your extrapolation and your timeliness points, and they're not – I mean, they have some substance to them. So taking just this problem, wouldn't it make more sense if our problem was how did they get to here to send it down to the district court and say, let them put in a declaration showing their work? I mean, why would we throw – because if we throw them out now, aren't they just going to remove it again since there's no time limit now on the removal? Well, is there no time limit on – and what you mean since there's no one-year period? Yeah, right. So something else will happen. There'll be some new paper filed. They'll say, oh, now we can show it for sure, and then they're going to bring it back again. So doesn't that raise the other issue is shouldn't – I mean, is there any end to the process? They're given an opportunity to wait 18 months to do the removal. They do it. They find that their declaration isn't sufficient, so they submit a supplemental declaration. Then we go to the Ninth Circuit, and they're given now another opportunity. But why wouldn't it make more sense to at least find out what their actual assumptions were and look at the actual numbers and see if they were, instead of going into this back-and-forth thing? I'm not sure that it's really a back-and-forth thing. I think they're the ones who have the burden, and they should come forward with their evidence. What did the district – And, you know, you just keep giving them mulligans. What did the district court say with respect to this? To what? To this issue of whether it's adequately calculated. Well, I think the court said that they were given an opportunity, that they had an obligation to provide the information supporting removal, and it couldn't be adequately determined based upon the information that they submitted. So – But I'm not sure that's true, because I don't know why you couldn't sit there with a calculator and work it backwards. Well, they never did it for the court. I understand that. That's a presentation problem. But whether the information is there, I'm not sure. I haven't tried it. Well, if you look at Cottingham's declaration, he says that he told payroll to do something, and then he told HR to do something. And in there is this big gap about what they actually did, and a gap in terms of what calculation methods they used and what data they used to reach the numbers. Well, he says they asked for data, and the Human Resources Department used the data, and he reviewed the data and calculations. Now, one of the things I don't understand, as I mentioned before, is that his earlier declaration said that there were 39 – they hired 39 salaried restaurant employees on November 16, 2006, and then they've hired 23 people since then. Then later he says there were 44 now and 58 who terminated. Those numbers, it seems to me, should add up to the same thing, but they don't. They absolutely don't. So I don't know what that's about. And are those numbers even relevant when the removal facts should be based upon time that the complaint is filed, not based upon things that occur subsequently 18 months later? These numbers should be based upon the situation that occurred at the time the complaint was filed. I believe that's the case. It's either the complaint was filed or the time the removal was done. But that's another question, whether the declaration is picking the wrong point in time for its conclusions. But I don't see – I think you can see that the plaintiffs and the courts' skepticism when there's multiple opportunities to provide the data that this recalculation is based upon, there's a reluctance from a defendant's standpoint to provide it such that they never do provide it. What is your response to the argument that they were not – they're not in as good a position as you are to understand how many hours you're claiming or overtime that you're entitled to? For the class representative?  I would say for the class representative, that's probably true. The class representative knows the hours worked. Now, when we get to trial, they'll trot out a bunch of witnesses to say that the class representative's hours of work are not correct and that they have all this other information about his hours of work. But right now they're saying, well, all we have is the class representative. I don't know the extent to which they actually do or don't have further information. I'll say that many employers do have information. At this point in time, they're saying they don't and that the plaintiff is the best source of the information on the hours worked. That may or may not be true later in the case. It certainly fits their argument now, and that may be why they're taking that argument. But again, that adds up to, I think, a small portion of the damages which they put forth as satisfying the CAFA member. And one question the Court may have is, I suppose, why didn't the plaintiff come in with any information to refute the damages that they put up? And I'll tell you that it gets back to the state court Crabb-Addison decision. At the time of their removal, we didn't even know the number of class members. We didn't know. You did at the time it was being litigated. Pardon me? You did at the time that the removal was being litigated, no? At the time? No. No. We didn't have any of that information because they were still withholding. We couldn't get payroll information. We couldn't get personnel power. I thought that the discovery decision was just before the removal. The discovery decision had been affirmed by the California Supreme Court and was on its way down for remand. Right. But you hadn't actually gotten anything yet. We hadn't received anything. They removed it just before the Superior Court said, just before the trial court said, comply with the order. And that is the tactical. Let's say my overall reaction to all this is, wait, can't you guys just go to some court and litigate and? Yeah. How long has it been since the plaintiff was filed in this? We've been up in Courts of Appeal for a couple of years now. We went all the way up for the crab addison decision, and then we, you know, as soon as that got affirmed, we ended the trial court decision. But this right now is just a fight about whether you're going to be in federal court or in state court. I'm sure we'll find something else to do. I'm sure you will. I would like to ask a couple of questions. Sure. All right. Thank you. Thank you. So one question is, well, what about his timeliness notion? That even leaving out the overtime, you had enough information on the rest to get to this number? Not the case at all. Why? If you look at the paragraphs of this declaration, it looks like it is the case. This is a vague boilerplate complaint that they filed. We are entitled under Ninth Circuit law to rely upon a paper. Now, what would have happened had it been removed based upon the assumptions, they would have moved to remand, saying that we can't make those assumptions. Well, if he says they never pay for overtime, for meal and rest breaks, you could have figured out, you could have dealt with that, because you could have gone and gotten the same records that you got for this to see how many people you were talking about, right? If that's what the complaint said, that the class members never received meal and rest breaks. Does it say that? It does not say that. What does it say? I don't have it in front of me. There's a vague allegation that Mr. Getty includes in all of his complaints that the company denies meal and rest breaks. It does not say that they were denied meal and rest breaks every single day or every single week. So what we tried to do, and we tried from the outset of this case, because we believed the case might be removable, we tried like heck to get them to give us the information, to give us that paper so we could find out if it was removable. And frankly, this whole timeliness thing, we would have removed if they had just answered the discovery. The only reason it took 18 months to remove was because they defied two court orders and said it was. Kagan. And then my other question is, what is the relevant data? There are these two Kevin Cunningham declarations. And as I say, I don't – they do seem to me to have completely disparate numbers, so I don't understand that. And I don't – and also the dates are – what's the relevant date? Is it the date of the complaint? Is it the date of the removal? Well, the last Kevin Cunningham declaration is using April 1st, 2009, which is neither of those things. So what's the relevant date for the $5 million? I believe that the relevant – I believe the relevant date is – and I'm sorry, I don't have a case like this. I believe the relevant date continues to move in a cross-section because while the case is pending – I shouldn't think about it. Maybe I'll share a footnote in one of our briefs. Because when the case is pending, more class members join the case. So if more class members came up next week, then you can remove it again? If it were not already removal, I believe so. I'll give you an example. I believe this to be the case, but I can't tell you for certain because it's not addressed in CAFA and it's not addressed in the legislative history. One of the requirements for removal under CAFA is that there have to be 100 class members. There could be a circumstance where at the time the case is filed, there are only 98 or 99 periods of class members. But because, like in this case, and I think Mr. Cottingham's declarations address this, where some positions – people were terminated, positions were filled. If on the date the case is filed, there are only 98 or 99 periods of class members, but six months later, there are now 100, 105, then I think it becomes removable on that date. It's very interesting, too. I don't believe it's addressed in the – Sotomayor, do you have any idea why the original Cottingham thing says that there were 39 people who they hired originally and 23 more who were hired, which would add up to 1262, and then the other one says that on April 1, 2009, they employed 44 and there were a total of 58 who terminated. Those two numbers should be the same, but they're way off. I don't have the declarations in front of me. One of the things that complicates this case, by the way, is, you know, we've been talking about the amount of controversy for the clients that I represent, the companies that I represent. There was a prior company that owned the Lamby's restaurants that owned and operated these Joe's Crab Shack restaurants before November 16, 2006, and they're also part of the case, and the amount of controversy as to them, we did not calculate. I understand that, but the – But I think – Both of these sets of numbers purport to be after November 16, 2000. Well, I think – I think – and I think the complicating factor is that they had – there was a certain number of managers that had worked for the company when Lamby's owned them that became managers on November 16, 2006, when our client began to own them. And then a number of them left the company and replaced. A number of other people came and went. Still, I can't understand why those two numbers are not the same. Well, okay. I don't think we're going to resolve it this morning. So did you wish to add something? We could go on here all day. Would it be helpful if we each submitted a three-page brief on the development date? I don't think so. Okay. No, thank you. The case just argued is submitted for decision. That concludes the Court's calendar for this morning. The Court stands adjourned. All rise. The Court is now adjourned.
judges: Schroeder, Berzon, Ikuta